UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAM ANTON and
CHERYL SNIPES,

   Plaintiffs,

v.                    Case No. 01-40098
                         01-40213
                       Hon. Sean F. Cox

SBC GLOBAL SERVICES,

   Defendant.
_____

## **OPINION AND ORDER**

This matter is before the Court on Defendant's Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial. Both parties have briefed the issues. For the following reasons, the Court **DENIES** Defendant's Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial.

## I. BACKGROUND

This action arises out of the failure to pay Plaintiffs the commissions they believed they were entitled to on a wholesale DSL contract with Colin Communications, Inc. ("CCI") Plaintiffs both assert a claim for breach of an implied-in-fact contract. The underlying facts are sufficiently set forth in the parties' Trial Briefs filed July 24, 2007. [Doc. 192 and 193].

This case was originally before Judge Paul Gadola, who transferred the case to this Court for trial. Trial commenced in this action on August 9, 2007. Both parties rested by August 21, 2007. Also on August 21, 2007, Defendant filed a motion for judgment as a matter of law. [Doc.

207].¹  On August 27, 2007, this Court denied Defendant's motion for judgment as a matter of law. [Doc. 210].  On August 28, 2007, the jury returned a verdict in favor of Plaintiffs and awarded Plaintiff Anton $3,191,400.00 and Plaintiff Freeman Snipes $3,510,540.00 in commissions.

On September 28, 2007, Defendant filed the instant Motion, seeking either judgment as a matter of law or a new trial.  Defendant argues: (1) no reasonable jury could have found Defendant assented to the implied in fact contract terms offered by Plaintiffs in light of the Sales Compensation Plan; (2) there was no past practice between the parties regarding wholesale DSL agreements that would support an implied-in-fact contract; (3) the only possible value of the contract is $15 million; and (4) under the Sales Compensation Plan and Administrative Guidelines, Plaintiffs are not entitled to commissions because the agreement with CCI was cancelled.

## II. STANDARD OF REVIEW

In deciding on a motion brought pursuant to Fed.R.Civ.P. 50(b), "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004)(quoting *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150-151 (2000)).  The court must review all of the evidence in the record, but "must disregard evidence favorable to the moving party that the jury is not required to believe." *Id.*  "That is, the court should give credence to the evidence favoring the nonmovant as well as that evidence supporting

---

¹The cases were consolidated for trial.  For convenience, the document numbers referred to with respect to trial and post-trial proceedings refer only to Plaintiff Anton, as identical documents were filed regarding Plaintiff Freeman Snipes.

the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses." *Id.* A motion for judgment as a matter of law should be granted "only if reasonable minds could not come to a conclusion other than one favoring the movant." *Id.*

### III. ANALYSIS

**A. Could a Reasonable Jury Conclude From the Evidence Presented at Trial that Defendant Assented to the Implied-in-Fact Contract Terms Offered by Plaintiff, in Light of the Sales Compensation Plan?**

Defendant argues that "the threshold issue with respect to Plaintiffs' implied-in-fact contract claims is whether a reasonable objective person could find that SBC assented to the terms of the implied-in-fact contracts alleged by Plaintiffs, or stated otherwise, whether a reasonable objective person could find that SBC assented to pay Plaintiffs commissions based on LCR or 'on contract.'" [Motion, p.12]. Defendant contends that based on the holding in *Mannix v. County of Monroe*, 348 F.3d 526 (6th Cir. 2003), because, according to Defendant, it maintained and posted its Sales Compensation Plan which contained conflicting terms, Plaintiffs cannot establish mutual assent.

In *Mannix*, the plaintiff suspected his supervisors of wrongdoing and tapped one of his supervisor's email accounts. After revealing a copy of an email the plaintiff obtained through his tap, the plaintiff was terminated. Following a trial, the jury found in the plaintiff's favor on his claim of wrongful discharge, based on the plaintiff's contention that his employment was terminable only for just-cause. The plaintiff relied on a "legitimate expectation" theory of just-cause employment. See *Toussaint v. Blue Cross Blue Shield of Michigan*, 408 Mich. 579 (1980). The district court denied the defendant's motion for judgment as a matter of law and the

3

defendant appealed. The Sixth Circuit noted that the sole question before the court was whether the defendant's statements created a legitimate expectation of just-cause employment.

The court reversed the district court's ruling after finding that the plaintiff entered into an express at-will employment relationship. The court found that any evidence of a legitimate expectation of a just-cause relationship was insufficient to create an express contract or serve as a novation of the existing contract. Specifically, the plaintiff relied on personnel policies that identified several offenses that could result in termination - evidence which can imply just-cause employment where there is no express agreement on the issue. After rejecting the plaintiff's claim on that basis, the court went on to state that even if the plaintiff did not have an express at-will employment agreement, the personnel policies did not create a legitimate expectation of just-cause employment because in addition to listing offenses, they also expressly stated that employment was terminable at-will. Further still, the court stated that the plaintiff could not maintain a legitimate expectation claim because the employer amended its personnel policies to clarify that employment was terminable at-will prior to his termination. The court held that the defendant's distribution of an employee handbook constituted reasonable notice sufficient to bind employees to the contractual modification, regardless of whether an affected employee actually reads it. *Mannix*, 348 F.3d at 535-536. The court noted that "[t]he material issue is *reasonable notice* to the workforce in general because a 'claim based on legitimate expectations rests on the employer's promises to the work force in general rather than to an individual employee.'" *Id.* at 536 (citation omitted)(emphasis original).

Defendant relies on *Mannix* for the proposition that its alleged distribution of the Sales Compensation Plan was sufficient to bind Plaintiffs to its terms, regardless of whether they

4

received individual notice of the terms. *Mannix* is inapplicable to the Plaintiffs' implied-in-fact contract claim. "A contract implied in fact arises under circumstances which, according to the ordinary course of dealing and common understanding, of men, show a mutual intention to contract." *Erickson v. Goodell Oil Company, Inc.*, 384 Mich. 207, 211-212 (1970)(citation omitted). "A contract is implied in fact where the intention as to it is not manifested by direct or explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction." *Id.* This differs from a legitimate expectation claim because it involves representations made to an individual employee. A legitimate expectation claim rests on "the employer's promises to the work force in general - for example, promises contained in a company handbook - rather than on promises made to an individual employee." *Novak v. Nationwide Mutual Ins. Co.*, 235 Mich.App. 675, 682-683 (Mich.App. 1999).

The statement in *Mannix* that distribution of an employee policy is sufficient to bind an employee regardless of whether they had individual notice of the policy or actually read it is irrelevant for purposes of this case, because the focus in this case is not on an employers promises to the workforce in general, but on the manifestation of mutual intentions between the individual parties.[2] Here, Plaintiffs presented evidence that they did not have notice of the applicability and terms of the Sales Compensation Plan.[3] Magistrate Judge Pepe, in his Report

---

[2]As Defendant itself argues, legitimate expectation law does not apply to compensation disputes, compensation claims must be established according to traditional contract theories. [Reply, p.3].

[3]Also notable is that in *Mannix*, the court stated that "*[u]ncontradicted* evidence establishes that the [defendant] did provide reasonable notice, in that it undertook steps reasonably calculated to reach the affected employees." *Mannix*, 348 F.3d at 536 (emphasis

5

and Recommendation regarding Defendant's motions for summary judgment, addressed the issue.[4] He found that unlike in *Mannix*, "here reasonable individual notice of the large sale exception is required either in the formation or modification of the compensation agreement...[Defendant] must at least prove that employees knew the Plan - with its terms and exceptions - applied to them and was posted at an online site reasonably available to its employees." [Doc.120, p.21]. Judge Pepe also noted that even if Defendant shows Plaintiffs accessed the Compensation Library, there is still a question of fact regarding whether Plaintiffs knew the Sales Compensation Plan and Administrative Guidelines applied to them. [Doc.120, pp.20-21]. At trial, Plaintiffs presented evidence from which a reasonable jury could find that Plaintiffs did not have reasonable individual notice of the applicability and terms of the Sales Compensation Plan and Administrative Guidelines. Presumably based on this evidence, the jury found in Plaintiffs' favor. The Court will not disturb the finding.

> **B.** **Is Defendant Entitled to Judgment as a Matter of Law Because it Claims There was no Past Practice with Respect to Wholesale DSL Agreements?**

Defendant argues that Plaintiffs failed to present evidence of the course of performance for wholesale DSL contracts and therefore cannot establish an implied-in-fact contract. According to Defendant, commission was paid in various ways depending on the product. Defendant asserts that since the CCI Agreement was the first involving wholesale DSL products, Plaintiffs cannot establish a past practice of paying commissions based on an LCR.

---

added). In this case, Plaintiffs dispute whether Defendant took reasonable steps to provide notice of the applicability and terms of the Sales Compensation Plan to affected employees.

[4]Over objections, Magistrate Judge Pepe's Report and Recommendation was adopted by Judge Gadola. [Doc. 130].

Defendant's argument fails because evidence of a past practice in paying commissions is not a necessary element to an implied-in-fact contract claim. Plaintiffs presented evidence that demonstrated it was reasonable for Plaintiffs to believe they would be paid based on the LCR as they had in other service contracts. The jury apparently agreed. Defendant does not establish that this was an error as a matter of law.

### C. Was $15 Million the Only Possible "On Contract" Value?

Defendant asserts that the only possible "on contract" value from which commissions could be calculated is $15 million, because the CCI Agreement did not contain a monthly obligation to purchase DSL lines as would normally be used to calculate the LCR. However, Plaintiffs presented evidence that several individuals stated the LCR on the CCI Agreement was much higher than $15 million. In addition, the parties stipulated that Defendant "characterized the CCI Data Services Agreement internally as a Billion-Dollar agreement and/or deal worth in excess of One Billion Dollars." [Doc. 175, p.6].

"A party asserting a claim has the burden of proving its damages with reasonable certainty." *Berrios v. Miles, Inc*., 226 Mich.App. 470, 478 (Mich.App. 1997). "Although damages based on speculation or conjecture are not recoverable, damages are not speculative merely because they cannot be ascertained with mathematical precision." *Id.* (internal citation omitted). "It is sufficient if a reasonable basis for computation exists, although the result be only approximate." *Id.* "Where injury to some degree is found, we do not preclude recovery for lack of precise proof of damages." *Id.* (citation omitted). See also *Howard v. City of Melvindale*, 27 Mich.App. 227, 235 (Mich.App. 1970)("On the principle that where a litigant can show he has been damaged, but his damages cannot be measured with certainty, that it is better that he

7

recover more than he is entitled to than less, the rule in Michigan is that the risk of the uncertainty is cast upon the wrongdoer, not the injured party.").

The jury's determination that the LCR was upwards of $530 million is not speculative given the evidence presented.[5] Regardless of whether the witnesses subjectively believed what they were saying, several individuals objectively stated the value of the CCI Agreement to be between $200 million and $1 billion. Thus, relying on these statements; the stipulation that the Defendant characterized the contract as being worth over $1 billion; and other evidence presented; the jury could reasonably have found that the CCI Agreement had an LCR value of more than $15 million.

> **D. Under the Sales Compensation Plan, Should Plaintiffs Have Been Denied Commissions Because the CCI Agreement was Cancelled?**

Defendant argues that Plaintiffs are not entitled to commissions whatsoever because the CCI Agreement was cancelled. Defendant argues that the evidence shows that Defendant paid Plaintiffs' commissions consistent with the Sales Compensation Plan and Administrative Guidelines. Defendant notes that the Administrative Guidelines state that commissions paid that are "associated with a cancellation" must be subtracted from future commission payments. Defendant concludes that because the CCI Agreement was cancelled prior to any orders being placed, Plaintiffs are not entitled to commissions. Defendant attempts to differentiate the CCI Agreement at issue from other contracts with CCI in which Plaintiffs were paid commissions despite cancellation. It argues that the other contracts were simultaneously an order for services,

---

[5]Defendant's argument that the jury's award is speculative because the witnesses testified that they were only speculating as to the value of the CCI Agreement is without merit. The jury was free to make its own credibility determination regarding whether the witnesses believed their statements accurately reflected the LCR at the time they were made.

whereas the CCI Agreement was not also an order for services.

Defendant's argument fails on two grounds. First, Defendant did not timely seek determination of the legal and factual issues it now relies on. Defendant's argument requires a determination of whether this provision of the Administrative Guidelines was a term of Plaintiffs' implied-in-fact contracts, and whether the cancellation of the CCI Agreement was different from the cancellation of the other contracts with CCI where Plaintiffs were allowed to keep their commissions such that the Administrative Guideline precluding commissions applied. Defendant did not request or argue for these determinations. In the Joint Final Pretrial Order, the parties indicated there were no issues of law to be litigated, and did not identify the applicability of this provision of the Administrative Guidelines as a factual issue to be litigated. [Doc. 175, p.8]. Further, Defendant did not raise this argument in its motion for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a), and it is therefore waived. "[A] motion for judgment as a matter of law must 'specify the judgment sought and the law and facts on which the moving party is entitled to the judgment.'" *Kusens v. Pascal Company, Inc*., 448 F.3d 349, 361 (6th Cir. 2006)(citing Fed.R.Civ.P. 50(a)). "A post-trial motion for judgment may not advance additional grounds that were not raised in the pre-verdict motion." *Id.*

Defendant's argument also fails because it presumes that the provisions of the Sales Compensation Plan and the Administrative Guidelines are a binding part of the implied-in-fact contract with Plaintiffs. As discussed above, the jury could reasonable have found that the terms of the Sales Compensation Plan and Administrative Guidelines were not a part of the implied-in-fact contract with Plaintiffs. Accordingly, Defendant is not entitled to judgment as a matter of law on the basis of the cancellation of the CCI Agreement.

## IV.    CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Renewed Motion for Judgment as a Matter of Law, or in the Alternative, for a New Trial.

**IT IS SO ORDERED.**

**S/Sean F. Cox**
**Sean F. Cox**
**United States District Judge**

**Dated: February 4, 2008**

**I hereby certify that a copy of the foregoing document was served upon counsel of record on February 4, 2008 by electronic and/or ordinary mail.**

**S/Jennifer Hernandez**
**Case Manager**